UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                                  Chapter 11

Casterline II, L.L.C.,                                                  Case No. 12-67640

      Debtor.                                                   Hon. Phillip J. Shefferly
_____/

### ORDER AWARDING FEES AND COSTS TO DEBTOR'S ATTORNEY

This order deals with a first and final fee application filed by the attorney for the Debtor in this dismissed Chapter 11 case. Before specifically addressing the fee application, it is helpful to review the background facts.

### Background

Roxanne Casterline is an individual who, along with her family, has been in the business of owning and operating funeral homes for many years. Originally, Mrs. Casterline and her family owned a funeral home in Northville, Michigan, through an entity known as Casterline L.L.C. ("Casterline I"). Later, Mrs. Casterline and her family built another funeral home, this one in South Lyon, Michigan. The South Lyon funeral home was owned by an entity known as Casterline II, L.L.C. ("Casterline II"). The two funeral homes were operated by a separate entity owned by Mrs. Casterline and her family.

Financing for the construction of Casterline II was provided by First Place Bank, formerly known as Franklin Bank, N.A. ("First Place Bank"). First Place Bank holds a mortgage on both of the funeral homes, as well as on some additional vacant property owned by Casterline II. Mrs. Casterline is a guarantor of the debt to First Place Bank. In June, 2012, Casterline I,

Casterline II, and Mrs. Casterline entered into a forbearance agreement with First Place Bank. The forbearance agreement required First Place Bank to be paid in full by December 29, 2012. Apparently, with the consent of First Place Bank, Mrs. Casterline, Casterline I, and Casterline II engaged David Findling as a "chief restructuring officer" to work with them to sell the South Lyon funeral home and to pay First Place Bank.

Before the South Lyon funeral home was sold, and before the expiration of the forbearance agreement, Mrs. Casterline filed an individual Chapter 11 case, no. 12-65848, on November 27, 2012. Soon after, the entities that owned the two funeral homes each filed their own Chapter 11 cases. On December 13, 2012, Casterline I filed case no. 12-66972. On December 21, 2012, Casterline II filed case no. 12-67640. Attorney Kurt O'Keefe ("O'Keefe") represented both Casterline I and Casterline II in their Chapter 11 cases, while another attorney represented Mrs. Casterline in her individual case. When Casterline II, the debtor in this case, filed its bankruptcy case, it owned only the South Lyon funeral home and a vacant parcel of property consisting of seven acres and a farmhouse adjacent to the South Lyon funeral home ("Vacant Property"). At the initial conference held in this Chapter 11 case, O'Keefe informed the Court that the reason for Casterline II filing Chapter 11 was to enable it to sell the South Lyon funeral home.

On January 29, 2013, Casterline II filed a motion to sell the South Lyon funeral home. Casterline II requested an expedited hearing, which the Court granted. There was no objection to the proposed sale. After the hearing, the Court entered an order on February 1, 2013 approving the sale of the South Lyon funeral home. The sale was closed. After that sale, the only property left in this estate was the Vacant Property.

Basically, nothing happened in Casterline II's case after the sale of the South Lyon funeral home. Although Casterline II was required by the Court's Chapter 11 case management order to file a combined plan of reorganization and disclosure statement by April 22, 2013, Casterline II did not do so. Nor did it request an extension of that date. The only other activity in the file consisted of a motion filed by Casterline II on June 18, 2013 to sell the Vacant Property. Although the motion was granted without objection, no sale of the Vacant Property was ever closed.

With no plan of reorganization and disclosure statement filed, no extension obtained, no business being operating by Casterline II, and the Vacant Property comprising the only asset of this estate, the Court issued an order to show cause on October 18, 2013 why the case should not be dismissed or converted to Chapter 7. The Court held a hearing on the order to show cause on November 1, 2013 and determined that the case should be dismissed. On November 5, 2013, the Court entered an order dismissing the case.

Like Casterline II's case, Mrs. Casterline's individual Chapter 11 case was dismissed, although it took a slightly different path to get there. Mrs. Casterline did file a plan of reorganization and disclosure statement in her case, but it was not approved by the Court. Then Mrs. Casterline tried to convert her case to Chapter 13, but the Court denied that request. Mrs. Casterline's case was dismissed on October 21, 2013.

Casterline I's case fared no better. Like Casterline II, Casterline I did not file a plan of reorganization and disclosure statement. As a result, the Court dismissed Casterline I's case on August 19, 2013.

To recap, Mrs. Casterline, Casterline I and Casterline II all filed Chapter 11 cases. First Place Bank was the largest creditor in each of the three cases. It is clear from even a cursory review

of the files that the cases were all filed to deal with First Place Bank. In two of the cases, no plan of reorganization was ever filed. And in the only case where a plan of reorganization was filed, the Court denied confirmation of the plan.

### O'Keefe's fee application

After Casterline II's case was dismissed, the Court closed the case. The Court reopened the case at the request of O'Keefe, so that he may file a fee application. On November 14, 2013, O'Keefe filed a first and final fee application (ECF No. 75) requesting fees in the amount of $33,750.00 and costs in the amount of $1,259.88. On December 2, 2013, Casterline II, through Mrs. Casterline, objected. On December 4, 2013, First Place Bank objected.

On January 13, 2013, the Court held a hearing on O'Keefe's application. The Court determined at the hearing that it would not rule on the application because the time records attached to it included not just O'Keefe's time for his services in Casterline II, but also included the time for his services representing Casterline I in its Chapter 11 case. O'Keefe's time records lumped together his services in the two cases even though they were two separate cases that had not been substantively consolidated.[1] Although both Casterline II and First Place Bank made other objections to the application at the hearing, the Court indicated it would not consider the objections or the application until O'Keefe, at a minimum, prepared and filed a breakdown of his time between the two Chapter 11 cases and, more specifically, a breakdown of his time in the Casterline II case in which the first and final fee application had been filed.

---

[1] The Court did require all three Chapter 11 cases of Mrs. Casterline, Casterline I, and Casterline II to be jointly administered, but it did not substantively consolidate any of the cases.

On January 14, 2014, the Court entered an order (ECF No. 88) regarding further proceedings on O'Keefe's application. This order required O'Keefe to file with the Court no later than January 24, 2014 a supplemental exhibit separately identifying the time that he spent in each of the two cases. The order further required O'Keefe to serve the supplemental exhibit upon Mrs. Casterline and First Place Bank. The order also provided a period of time for both Casterline II and First Place Bank to respond to the supplemental exhibit. The Court then adjourned the hearing on O'Keefe's application.

On January 24, 2014, O'Keefe filed a "Supplemental First and Final Application for Fees of Attorney for Debtor" (ECF No. 89) ("Supplemental Application"). The Supplemental Application contains a breakdown of O'Keefe's time, and separates the time that he spent providing services in the two cases. The Supplemental Application requests that the Court award $24,257.50 of fees plus $618.40 of costs in this Chapter 11 case for services rendered by O'Keefe on behalf of Casterline II. The Supplemental Application, although not filed separately in the Casterline I Chapter 11 case, also requests that the Court make an award in the Casterline I Chapter 11 case of $8,268.50 of fees and $621.48 of costs. The Supplemental Application explains further that O'Keefe received a $5,000.00 payment from Casterline II to be applied to any fees awarded in its case, and a $5,000.00 payment from Casterline I to be applied to any fees awarded in its case.

Casterline II timely filed an objection to the Supplemental Application. Casterline II's objection was signed by Mrs. Casterline (ECF No. 90). Casterline II's objection states that the fees requested by O'Keefe in the Casterline II bankruptcy case are excessive because the bankruptcy case was basically a waste of time. According to Mrs. Casterline, the only action taken in Casterline II's bankruptcy case consisted of the sale of the South Lyon funeral home, but that was a sale that was

already arranged prior to the time that Casterline II filed its bankruptcy case while the forbearance agreement was in place with First Place Bank. In any event, Mrs. Casterline asserts that the sale was concluded in February, 2013, yet Casterline II's Chapter 11 case continued without purpose, but with additional charges being made, for another nine months.

On March 7, 2014, the Court held the adjourned hearing. Mrs. Casterline again objected that the fees requested from Casterline II were excessive. First Place Bank also objected that O'Keefe's fees in the Casterline II case were excessive but, more importantly, also argued that whatever fees are awarded should not be surcharged either to First Place Bank or to any of the proceeds that it received from the sale of the South Lyon funeral home. At the conclusion of the March 7, 2014 hearing, the Court took the matter under advisement.

Applicable legal standard

"The payment of attorneys who are appointed pursuant to 11 U.S.C. § 327 is governed by 11 U.S.C. § 330[.]" Dery v. Cumberland Casualty & Surety Co. (In re 5900 Associates, Inc.), 468 F.3d 326, 329 (6th Cir. 2006). Section 330(a)(1)(A) provides that the Court may award "reasonable compensation for actual, necessary services rendered by . . . [a] professional person, or attorney and by any paraprofessional person employed by any such person . . . ."

The Sixth Circuit Court of Appeals has directed that bankruptcy courts should use the lodestar method in determining reasonable attorney fees under § 330(a) of the Bankruptcy Code. Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334, 337 (6th Cir. 1991).

> The starting point in the lodestar analysis is to determine a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The next step in the analysis is to determine the lawyer's reasonable hours. If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper.

In re Williams, 357 B.R. 434, 438-39 (B.A.P. 6th Cir. 2007) (citations omitted).

"The burden of proof is on the professional requesting compensation for his or her services from the bankruptcy estate." In re Sharp, 367 B.R. 582, 585 (Bankr. E.D. Mich. 2007) (citing In re New Boston Coke Corp., 299 B.R. 432 (Bankr. E.D. Mich. 2003)). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." In re Pettibone Corp., 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (citation omitted). "While the burden is on the applicant to justify a fee request, the bankruptcy court must expressly discuss the amounts that are not supported by the application and provide a reasoning to support the court's decision." In re Williams, 357 B.R. at 439 (internal quotation marks and citation omitted). "Regardless whether objections are raised to the application seeking compensation from the bankruptcy estate, the Court has a duty to independently examine the reasonableness of the requested fees," In re J.F. Wagner's Sons Co., 135 B.R. 264, 266 (Bankr. W.D. Ky. 1991), and may "award compensation that is less than the amount of compensation requested" Cupps & Garrison, LLC v. Rhiel (In re Two Gales, Inc.), 454 B.R. 427, 433 (B.A.P. 6th Cir. 2011).

Discussion

There are no objections to the hourly rate of O'Keefe in this case. O'Keefe is an experienced bankruptcy petitioner and, in the Court view, his hourly rate of $375.00 is not outside of the range of reasonableness for attorneys with similar skill and experience. The objections in this case instead relate to whether the services that he rendered were reasonable. In addition to considering the objections that were filed by Mrs. Casterline and First Place Bank, the Court, as explained above, has an independent duty of its own to review the reasonableness of the fees requested. After

-7-

reviewing the Supplemental Application and the objections, and after undertaking its own review of the services rendered, the Court concludes that not all of the fees requested are reasonable. As a result, the Court will not award all the fees requested in the Supplemental Application, but will reduce the award of fees for the following reasons.

First, the Supplemental Application contains time for services rendered by O'Keefe in the Casterline I Chapter 11 case in the amount of $8,268.58, plus costs of $621.48. Those services were not rendered by O'Keefe for Casterline II, the debtor in this Chapter 11 case. Therefore, they are not compensable in this case and are disallowed by the Court in this case, without prejudice to O'Keefe's right to file a separate fee application in the Casterline I Chapter 11 case to request an award of fees for the services that he rendered in that case.

Second, there is a substantial error in the arithmetic contained in the Supplemental Application that also requires a reduction. The Supplemental Application requests $24,257.50 of fees in the Casterline II case. However, the time records attached to the Supplemental Application add up to much less. The Court has examined every time entry on the time records that comprise pages 1 through 26 of ECF No. 89-4. They add up only to $21,632.50. Therefore, out of the Supplemental Application's request for $24,257.50, the Court disallows $2,625.00.

Third, even within the Supplemental Application's description of services performed in the Casterline II case, there are included three separate time entries for services that were not rendered in this case, but were instead rendered for Casterline I. On January 1, 2013, O'Keefe charged $56.25 for a telephone call to First Place Bank regarding a cash collateral order. Likewise, on January 6, 2013, O'Keefe charged $112.50 for a telephone to Mrs. Casterline regarding a cash collateral order. There was no cash collateral motion or order in this case. However, a review of

the docket in Casterline I shows that there was a cash collateral order in that case. On August 19, 2013, O'Keefe charged $750.00 for a hearing on plan confirmation, noting that the case was dismissed at that time. There was no plan confirmation hearing in this case, and this case was not dismissed until November 5, 2013. These three time entries charged to Casterline II all appear to be for services rendered for Casterline I, and are not compensable in this case.

Fourth, there are also two duplicate time entries on the last page of time records attached to the Supplemental Application. The $37.50 charge on October 20, 2013 to draft an email to Mrs. Casterline regarding a show cause hearing, and the $487.50 charge on November 1, 2013 to attend the show cause hearing are repeated. The duplicate charges are disallowed.

Fifth, the Court finds that not all of the remaining charges for services rendered to Casterline II by O'Keefe are reasonable. The remaining charges for services by O'Keefe performed for Casterline II break down into two categories. The first category consists of services rendered from the date that the bankruptcy case was filed, December 21, 2012, until February 25, 2013. That period of time covers the preparation of the Chapter 11 case, the § 341 meeting, the initial Chapter 11 conference, and the preparation of pleadings and prosecution of a motion to sell the South Lyon funeral home. After subtracting the two entries during this period that relate to the Casterline I case, the remaining charges in this first category add up to $14,488.75. After considering each of the factors identified in § 330 of the Bankruptcy Code, the Court concludes that the remaining services in this category were reasonable in the circumstances of this case. The primary purpose of the Chapter 11 case was to sell the South Lyon funeral home. The services rendered by O'Keefe up to February 25, 2013 concentrated on that objective. The time charges for the specific services during this period appear reasonable to the Court. Further, these services seem

-9-

to the Court to have been reasonably beneficial at the time that they were performed, since they were in furtherance of the Chapter 11's primary objective, which was to sell the South Lyon funeral home.

But the same cannot be said of the services in the second category. After reducing for the time incorrectly charged for services in the Casterline I case, and after reducing for the two duplicate entries, the time charged for services performed by O'Keefe after February 25, 2013 adds up to $5,700.00. Most of those services appear to relate to Casterline II's attempt to sell the Vacant Property, communications regarding the status of the sale of the Vacant Property, or communications relating to First Place Bank. Although the Court recognizes that the services rendered in preparing and prosecuting the motion to sell the Vacant Property may well have been perceived to have a benefit to the Debtor, the Court does not view the remaining services the same way.

The Court agrees with Mrs. Casterline that the majority of the services performed after February 25, 2013 were not necessary to the administration of, or beneficial at the time at which the services were rendered, toward the completion of the case. The case was drifting, and Casterline II did not take any steps to prepare and file a plan of reorganization. The Court finds that, of the $5,700.00 of services performed after February 25, 2013, only $956.25 were necessary or beneficial to the administration of this case at the time that such services were performed. This amount reflects the services performed up to and just after the plan and disclosure statement were due, but not filed, and includes O'Keefe's discussions with Mrs. Casterline about possible long term solutions regarding First Place Bank. There were other conferences between O'Keefe and Mrs. Casterline after this date concerning a possible global resolution with First Place Bank, but they took place well

after the deadline for filing a plan and disclosure statement had passed. By that time the plan and disclosure statement were due, and with the time records reflecting no entries in furtherance of filing a plan or disclosure statement, the services provided by O'Keefe during this period were no longer focused on the objectives of Chapter 11.

Conclusion

In sum, the Supplemental Application requests total fees of $32,526.00, plus costs of $1,239.88, for a grand total of $33,765.88. The Court first disallows all the fees and costs that the Supplemental Application attributes to Casterline I, consisting of $8,268.50 in fees, and $621.48 in costs. As for the requested fees and costs in Casterline II's case, the Court disallows the following amounts: (i) $2,625.00 of fees to reflect the fact that the time records attached to the Supplemental Application only add up to $21,632.50; (ii) $918.75 of fees for services performed for Casterline I and not for Casterline II; (iii) $525.00 of fees for duplicate entries; and (iv) $4,743.75 of fees for services rendered after February 25, 2013 that were not reasonably necessary or beneficial to the Casterline II estate. After making these reductions, the Court awards the balance of the fees requested in the Supplemental Application in the total amount of $15,445.00. In addition, the Court awards the costs incurred in this case in the amount of $618.40. Therefore, the total of fees and costs awarded to O'Keefe in this case is $16,063.40. O'Keefe has received a $5,000.00 payment from Casterline II. That payment is to be applied to the fees and costs awarded pursuant to this order. Accordingly, the unpaid balance owing by Casterline II to O'Keefe for fees and costs awarded by this order is $11,063.40.[2]

---

[2] In paragraph 11 of the first and final fee application (ECF No. 75), O'Keefe stated that he "intended to file a motion to surcharge First Place Bank" for his fees and costs. As explained above, First Place Bank objects to any request for surcharge. At the hearing held on January 13,

As explained, the Court makes no award of fees or costs for services that O'Keefe rendered to Casterline I in its case. If O'Keefe intends to request fees and costs in the Casterline I case, he must do so by filing a fee application in such case by May 9, 2014. Any fee application filed in the Casterline I case must be filed and served in such case in accordance with the application provisions of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules. The Court will enter a separate order in the Casterline I case reopening that case for this purpose. If no timely fee application is filed and served in such case, the Court will enter an order closing such case without further notice or hearing.

**IT IS SO ORDERED.**

.

**Signed on April 14, 2014**

          **/s/ Phillip J. Shefferly**
          **Phillip J. Shefferly**
          **United States Bankruptcy Judge**

---

2014, O'Keefe and First Place Bank alluded to a potential surcharge request by O'Keefe. The Court made clear that it does not consider either O'Keefe's initial application or the Supplemental Application to be a properly filed and served motion for surcharge under § 506(c) of the Bankruptcy Code. Even O'Keefe's initial application itself stated merely that he *intended* to file a motion for surcharge, acknowledging that the initial application itself was not a request for surcharge. Further, the Supplemental Application makes no reference to a potential motion for surcharge. In any event, the Court does not consider O'Keefe's initial application or his Supplemental Application to be a motion for surcharge, and expresses no view about the merits of any motion for surcharge that may be filed in the future.

-12-

12-67640-pjs    Doc 95    Filed 04/14/14    Entered 04/14/14 12:24:27    Page 12 of 12